# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**v.**                    **Case Nos.:** **3:15cr19/TKW/EMT**
                                      **3:18cv1108/TKW/EMT**

**EDDIE CASANOVA**

_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Defendant Eddie Casanova's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" and memorandum in support (ECF Nos. 174, 175). The Government filed an amended response (ECF No. 183), and Casanova filed a reply (ECF No. 186). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). After a review of the record and arguments presented, the undersigned recommends that the § 2255 motion be denied without a hearing. *See* Rules 8(a) and (b), Rules Governing Section 2255 Proceedings.

## PROCEDURAL BACKGROUND

On April 7, 2015, Eddie Casanova and Emilio Zundt were charged in a single-count indictment with conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii) (ECF No. 21).    Jose Robledo was also charged in Count One with conspiracy to possess with intent to distribute cocaine, but involving lesser amounts (i.e., more than 500 grams but less than 5 kilograms), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) (ECF No. 21)    Casanova alone exercised his right to a jury trial, at which he was represented by appointed counsel Joseph L. Hammons.    Both Robledo and Zundt testified against Casanova at trial (ECF No. 131 at 64–131, 205–50).    The jury found Casanova guilty, and by special verdict held him responsible for five or more kilograms of cocaine (ECF No. 84).    His motions for a new trial and for judgment of acquittal were denied (ECF Nos. 78–90).

The Presentence Investigation Report (PSR) characterized Casanova as a leader in the conspiracy who directed the activities of his two co-defendants (*see* ECF No. 110).    Using "conservative drug weight amounts," he was held accountable for between 15 and 50 kilograms of cocaine, which equated to a base offense level of 32 (ECF No. 110, PSR ¶¶ 33, 42).    He then received three, separate,

two-level upward adjustments for possession of a dangerous weapon (a pistol found

in a truck parked at a U-Haul storage unit), maintaining a premises for manufacturing

or distributing a controlled substance, and his leadership role (ECF No. 110, PSR ¶¶

43, 44, 46).    With a total offense level of 38 and a criminal history category of II,

the applicable advisory guidelines range was 262 to 327 months of imprisonment

(PSR ¶¶ 57–58, 93).    The Court sentenced him at the low end of this range to 262-

months imprisonment (ECF Nos. 116, 117, 133).

Casanova appealed, again represented by attorney Joseph Hammons.    He

unsuccessfully argued that the Government had not presented evidence of a single,

unified conspiracy.    Casanova also claimed his sentence was improper due to

guidelines errors regarding the quantity of drugs attributed to him, the premises

adjustment, and the firearm adjustment (*see* ECF No. 152).    The Eleventh Circuit

affirmed his conviction and sentence January 26, 2017 (*id.*).    This court received

Casanova's timely-filed § 2255 motion on April 23, 2018.[1]    Casanova asserts two

ineffective assistance of trial counsel (IATC) claims, based on counsel's failure to

---

[1] Although different dates appear on Casanova's motion, memorandum, certificates of service, and envelopes containing same, there is no dispute that the motion is timely.   *See Clay v. United States*, 537 U.S. 522, 527 (2003) (a judgment of conviction becomes final upon expiration of the 90-day period for filing a petition for certiorari contesting the appellate court's affirmation of the conviction, and a defendant has one year from that date to timely file a motion under § 2255).

raise two alleged Fourth Amendment violations.    As noted *supra*, the Government filed a response in opposition to the motion, and Casanova filed a reply thereto.

After filing his reply, Casanova filed a motion to compel trial counsel to release his files (ECF No. 187), which was denied without prejudice (ECF No. 188). Shortly thereafter, Attorney Hammons filed a "Notice of Documents Provided [to] Eddie Casanova Pursuant to Request," enumerating the documents he provided to Casanova during his representation[2]  (ECF No. 189).

## STATEMENT OF RELEVANT FACTS[3]

On March 9, 2015, Jose Robledo was pulled over for a traffic violation in Mississippi while transporting cocaine from Texas to Florida.    He consented to a search of his vehicle, and law enforcement found three kilograms of cocaine and two cell phones.    Robledo agreed to cooperate with the Government, including by executing a controlled delivery of the cocaine.    He thus continued eastward toward Florida, making monitored contact via text messages and phone calls with two

---

[2] Specifically, counsel indicated he had provided the following documents to Casanova: the indictment, the jury verdict form, transcripts of the sentencing hearing, the initial brief/appendix, the reply brief, and the Eleventh Circuit's opinion (ECF No. 189).   Counsel noted that the PSR was not provided due to Bureau of Prison regulations preventing inmates from possessing PSRs.

[3] The facts set forth in this section are taken from the PSR (ECF No. 110), the Government's brief on appeal (ECF No. 183, Attach. A at 3–10), and the Eleventh Circuit's opinion (ECF No. 152).

individuals known to him as "Primo" and "Lolo."    "Lolo" agreed to meet Robledo

outside a motel in Fort Walton Beach to pick up the cocaine and advised Robledo

he would be driving a black Toyota.    When "Lolo," later identified as Defendant

Casanova, pulled into the motel parking lot and parked next to Robledo's car, he was

arrested.    Agents searched Casanova's black Toyota Corolla and recovered $3,000

in cash, a cell phone, packing tape, sandwich baggies, and a container of inositol,

often used as a "cutting agent" for cocaine.    They also found a receipt in the name

of Emilio Zundt, issued by U-Haul Moving & Storage of Corpus Christi, Texas.

The U-Haul receipt led law enforcement to a storage facility in Texas where

a storage space and two parking spaces were leased in Zundt's name.    A Ford F-

450 King Ranch truck and a blue Dodge Ram truck were in the spaces.[4]    During

"free air sniffs" of the trucks' exteriors, a law enforcement canine gave a positive

alert on the Ford truck, but not the Dodge truck.    Next, after unsuccessfully trying

to make contact with Zundt at his house, agents applied for a search warrant for the

trucks (and storage shed).    Before law enforcement procured the warrant, Zundt

showed up at the storage facility and consented to a search of both trucks, although

---

[4] For clarity only, the undersigned notes that trial testimony indicated the Dodge truck was blue, although the Eleventh Circuit's opinion refers to it as black (ECF No. 131 at 146; ECF No. 152 at 4). Casanova states in his memo that the Ford truck was white (ECF No. 175 at 8).

he only had keys to the Dodge.    Agents found a loaded pistol and 4.5 kilograms of cocaine in the Dodge truck, as well as Febreze, tape, plastic wrap, rubber bands, and documentation indicating the truck was registered in Casanova's name in Florida. No drugs were found in the Ford.    Zundt's residence was searched, also with his consent, and agents found several ounces of cocaine that Zundt admitted he had taken from five kilograms that belonged to Casanova because Casanova owed him for courier services, and Zundt had not yet been paid (as explained more fully below).

Law enforcement also searched storage units in Fort Walton Beach bearing Casanova's or Zundt's name and located items typically associated with the drug trade, such as packaging materials, digital scales and cutting agents, along with vestiges of Casanova's defunct stucco business.    The search of these units is not at issue.

## ANALYSIS

### A. General Standard of Review

A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise

subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    Because a motion to vacate under § 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a § 2255 motion and will be considered procedurally barred.    *Lynn v. United States*, 365 F.3d 1225, 1234–35 (11th Cir. 2004); *Bousley v. United States*, 523 U.S. 614, 621 (1998).

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).    To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.    *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).    In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697;

*Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

A defendant must provide factual support for his contentions regarding counsel's performance.    *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992).    Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.    *See, e.g., Hollis v. United States,* 958 F. 3d 1120, 1124 (11th Cir. 2020) (counsel is not constitutionally ineffective for failing to raise meritless objection to use of prior drug convictions as predicate offenses under ACCA); *see also Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).

When counsel's alleged ineffectiveness involves a failure to litigate or competently litigate a Fourth Amendment claim, to demonstrate actual prejudice, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Green v. Nelson*, 595 F.3d 1245, 1251–52 (11th Cir. 2010). Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence been excluded. *Jones v. United States*, 224 F.3d 1251, 1259 (11th Cir. 2000); *Huynh v. King*, 95 F.3d 1052, 1058–59 (11th Cir. 1996); *Thomas v. Newsome*, 821 F.2d 1550, 1552 (11th Cir. 1987); *see also Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005).

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To

be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

## B. <u>Ground One</u>

Casanova complains that trial counsel was ineffective for deciding, allegedly without investigating, that there were no Fourth Amendment issues in the case. This general, conclusory assertion is belied by counsel's affidavit, in which he states that "Fourth Amendment issues were the subject of consideration and research" (ECF No. 183-2 at 2).    More particularly, counsel considered both the seizure of

Casanova's car and its subsequent search, as well as the search of the trucks in Texas and concluded he had no meritorious basis for a motion to suppress (*id*. at 2–3).

Casanova identifies two specific areas of Fourth Amendment concern.   In Ground One, Casanova asserts that counsel should have challenged the search of his vehicle incident to his arrest.   He contends the search went beyond the legal limits of a search incident to arrest because it took place after he was already arrested, handcuffed, and placed in a patrol car.   Casanova additionally claims that the scope of the search, which he characterizes as encompassing items not directly related to cocaine trafficking, transformed what might have been a "search incident to arrest" into a "general search" without a warrant (ECF No. 174 at 4–5).   Casanova is mistaken about the permissible scope of the search of his vehicle, and as such, he is mistaken in his belief that a meritorious Fourth Amendment challenge to the search existed.

The Supreme Court held in *Arizona v. Gant*, 556 U.S. 332 (2009), that police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe either that the arrestee might access the vehicle at the time of the search, or it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."   *Gant,* 556 U.S. at 335, 343, 351

(quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)).    In *Gant*, a driver was arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car.    Law enforcement then searched his vehicle and discovered cocaine.    Because Gant was arrested for a traffic offense, it was highly unlikely that evidence "relevant to the crime of arrest" would be found in his vehicle.    The Supreme Court thus affirmed the state court's determination that the search was unreasonable.    *Gant*, 556 U.S. at 351. Casanova's situation is distinguishable.

Casanova was arrested, not because of a traffic infraction, but because law enforcement knew he was prepared to accept delivery of the three kilograms of cocaine Robledo had transported from Texas.    Law enforcement also knew that Casanova was expected to pay Robledo $3,000 at the time of the delivery.    Thus, agents had probable cause to believe that Casanova's car was "being used as an instrumentality of drug-trafficking activity, [and] contained additional evidence of drug trafficking activity, such as drug paraphernalia, cash, or records of drug transactions, among other things."    *United States v. Alston*, 598 F. App'x 730, 734 (11th Cir. 2015) (citing *United States v. Brazel*, 102 F. 3d 1120, 1146–47 (11th Cir. 1997) (finding probable cause to justify warrantless search of vehicle because

circumstances indicated that the car was used to facilitate drug offenses)).    In accordance with *Gant*, it was reasonable for law enforcement to believe that a search of Casanova's vehicle might have turned up additional evidence relevant to the drug trafficking crime.    Therefore, the search was lawful.

While the discussion could end here, the court notes the Government has offered alternative bases for finding the search lawful, including for instance, the automobile exception to the warrant requirement.    *See United States v. Lindsey*, 482 F. 3d 1285 (11th Cir. 2007).

Under this exception the police may search a vehicle if it is readily mobile, and law enforcement has probable cause for the search.    *Lindsey*, 482 F. 3d at 1293 (citing *United States v. Watts*, 329 F. 3d 1282, 1286 (11th Cir. 2003).    The search need not occur contemporaneously with the lawful seizure of the vehicle, and no other exigent circumstances need exist.    *Id.* (citing *United States v. Johns*, 469 U.S. 478 (1985)).    To establish probable cause there must be "a fair probability that contraband or evidence of a crime will be found in the vehicle."    *Id.* (quoting *United States v. Tamari*, 454 F. 3d 1259, 1264 (11th Cir. 2006).    Finally, if officers have probable cause to believe that the vehicle contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching the car and

seizing the contraband. *Florida v.* White, 526 U.S. 559, 563–64 (citing *Carroll v. United States,* 267 U.S. 132, 149 (1925)). As the Government posits, the warrantless vehicle search at issue here fits within the automobile exception because there was a fair probability that contraband or evidence of a crime would be found in the vehicle.

In sum, Casanova has not established the existence of a meritorious Fourth Amendment issue regarding the search of his vehicle, which, if raised, would have changed the outcome of the proceedings. *Kimmelman*, *supra.* Counsel thus was not constitutionally ineffective, and Casanova is not entitled to relief.

## C. **Ground Two**

In his second ground for relief Casanova claims trial counsel performed deficiently because he did not challenge the searches of the two trucks parked at the storage facility in Corpus Christi, Texas (ECF No. 174 at 6–7). Casanova asserts that law enforcement trespassed, conducted an illegal "free air sniff" of the two trucks, did not have valid consent for the search, and did not have a warrant. Except as to the fact that law enforcement did not have a warrant, Casanova is mistaken.

Brian Hager, a Corpus Christi police officer and task officer with the Drug Enforcement Agency, testified at Casanova's trial regarding the events at the Texas

storage facility.    Officer Hager testified he received the receipt for the storage unit from an agent in Pensacola who requested that law enforcement check out the unit (ECF No. 131 at 145).    Hager went to the facility the following week and spoke with its management team.    The managers knew Zundt and told Hager two parking spaces were leased in Zundt's name, in addition to the storage unit (*id.* at 146).    Law enforcement observed a truck in each of the parking spaces, a Dodge Ram and a Ford F450, both of which, according to the VIN numbers, were titled to a female with a Fort Walton Beach address (*id.* at 146–47).    During the free air sniff, where the dog "went around where anybody else would be able to go around the vehicle," the dog alerted on the Ford truck, but not the Dodge (*id.* at 147–48).    Before attempting to secure a search warrant, Hager went to Zundt's home in an unsuccessful attempt to talk to him, while another officer remained with the trucks (*id.* at 148–49).    While agents were in the process of applying for search warrants, Zundt arrived at the storage facility and "provided permission to search both vehicles; however, he only had the key to the blue Dodge, he did not have the key to the F450 King Ranch truck" (*id*. at 149).

Casanova contends that Zundt's consent to search the Ford—a vehicle for which he had neither the keys nor the title—was invalid (ECF No. 175 at 32).    He

also argues in his reply that Zundt's consent was either coerced or it was the "fruit of the poisonous tree" due to law enforcement's "trespass" on the storage facility property (ECF No. 186 at 20).    Casanova frames the manner in which law enforcement obtained consent as: "Hey Zundt, we already trespassed on the leasehold and did an illegal dog sniff on the truck and someone had left to go get a warrant—you had better consent to a search" (ECF No. 186 at 20).    As such, says Casanova, Zundt's consent was involuntary, and counsel should have raised a Fourth Amendment challenge to the search.    The undersigned agrees with trial counsel's assessment that no valid basis existed to challenge the Texas searches.

First, as to the issue of trespass, Casanova has offered no evidence to support his suggestion that the managerial team did not allow law enforcement access to the property containing the storage unit and parking spaces.    *See United States v. Terry,* No. CR 406-332, 2007 WL 496630, *5 (S.D. Ga. Feb. 12, 2007) (law enforcement had a trained narcotics K-9 walk through the storage facility at "the invitation of the property manager"); *see also, e.g., United States v. Gutierrez*, 810 F. App'x 761, 763 (11th Cir. 2020) (11th Cir. 2020) (affirming conviction where management of a storage facility confirmed that a suspected drug trafficker rented the storage unit in question, a drug-detection dog then alerted to that unit, and a search warrant issued

for the unit based on the alert).    Thus, Casanova has not established that law enforcement trespassed on the storage facility premises.

Second, a canine's sniff of the outside of a vehicle does not qualify as a search for Fourth Amendment purposes.    *See United States v. Holloman*, 113 F. 3d 192, 194 (11th Cir. 1997) (citing *United States v. Place*, 462 U.S. 696, 707 (1983) (holding that, because canine sniff of a person's luggage indicated only the presence or absence of contraband, the canine sniff was not a "search" within the meaning of the Fourth Amendment)); *Hearn v. Board of Public Educ.* 191 F. 3d 1329, 1332 (11th Cir. 1999) (a dog sniff of a person's property located in a public place is not a search within the meaning of the Fourth Amendment); *see also Illinois v. Caballes*, 543 U.S. 405, 410 (2005) (a K-9 sniff during a lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment); *Gutierrez,* 810 F. App'x at 763 (noting law enforcement's use of a drug dog to conduct an exterior sniff of several storage units before obtaining a search warrant); *cf. Florida v. Jardines*, 569 U.S. 1 (2013) (use of a drug-sniffing dog on the front porch of a home was a trespassory invasion of the curtilage and constituted a "search" for Fourth Amendment purposes).    A drug-detection dog's alert provides probable cause to search, and

when the property in question is a vehicle, the search may be done immediately, without a warrant.    *See Hearn*, 191 F. 3d at 1333 (citing *California v. Acevedo*, 500 U.S. 565, 581 (1991)).

The remaining issue is consent.    A search of property, without a warrant or probable cause, is proper under the Fourth Amendment when preceded by valid consent.    *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).    To be valid, the consent must be voluntary.    *Id.*    For consent to be deemed voluntary, it must be "the product of an essentially free and unconstrained choice."    *United States v. Garcia,* 890 F. 2d 355, 360 (11th Cir. 1989) (citing *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)).    Here, even if law enforcement told Zundt that someone had already left the premises to secure a warrant, this would not have rendered his consent involuntary.    *See Garcia*, 890 F.2d at 361 (officers' statement that they would secure the house and attempt to obtain a search warrant if he refused consent was not coercive and did not render consent involuntary).    There is no evidence, for instance, that law enforcement threatened Zundt that the vehicles would be damaged if he withheld consent and they were required to procure a warrant, and even if they had it would not have invalidated the consent.    *See United States v. Long*, 866 F. 2d 402, 405 (11th Cir. 1989) (officers' statement that they would return

and "dig the place up" if he refused consent to search backyard for buried counterfeit currency was not coercion).    Furthermore, the Supreme Court has recognized that there may be legitimate reasons for affording consent.    *See Fernandez v. California*, 571 U.S. 292, 307 (2014) (consent to a warrantless search obviates a burden on the consenting person because of the delay inherent in the warrant application process; consent may also serve to dispel suspension or ensure that contraband or dangerous items are discovered and removed).

Last, it bears mention that another requirement of a valid consensual search is that the person giving the consent must have authority to do so, *United States v. Matlock*, 415 U.S. 164, 171 (1974), or must reasonably appear to have the authority to do so, *Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990).    The "consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared."    *Fernandez*, 571 U.S. at 299-300 (quoting *Matlock*, 415 U.S. at 170).    A third party in sole possession and control of a vehicle clearly has the authority to consent to its search. *United States v. Dunkley*, 911 F. 2d 522, 526 (11th Cir. 1990) (citations omitted). An owner or lessee who relinquishes possession to another abandons his or her

privacy interest in the vehicle, and it follows that the third party to whom possession was surrendered also has authority to consent to a search.    *Id.*

Zundt testified that he was in Fort Walton Beach with Casanova, driving the blue Dodge truck that was later found in the storage unit parking space in Texas (ECF No. 131 at 222).    Zundt had five kilograms of cocaine in the truck that had been obtained in Mobile, and he was supposed to wait for Casanova while Casanova changed vehicles and picked up some additional cocaine (presumably, the cocaine transported by Robledo), but Casanova never returned (*id*. at 222–26).    Zundt stayed overnight in a motel, and when he learned the next day from an associate that Casanova had been arrested, Zundt returned to Texas with five kilograms of cocaine in the blue Dodge (*id.* at 229–32).    He took some of that cocaine as payment for his courier services, and he parked the truck containing the rest of the cocaine and the pistol at the storage unit (*id*. at 232–34).    Zundt testified that when he had contact with agents at the storage facility he provided them with the keys to the Dodge truck and told them what was in that truck (*id*. at 234–35).

In summary, then, as to the Dodge truck, at the time Zundt consented to the search, he was in sole possession of the vehicle.    He had driven it back to Corpus Christi from Fort Walton Beach; it was parked in a parking spot rented in his name;

and he had the keys to the vehicle in his possession.    His consent to the warrantless search was valid, and counsel was not constitutionally ineffective for failing to challenge it.    *Kimmelman, supra.*

The analysis as to the Ford truck is slightly different although the conclusion is the same.    A law enforcement canine alerted to the Ford during the free air sniff, thus providing probable cause for a search.    Zundt's possessory interest was arguably less than it was as to the Dodge because, although the vehicle was in his leased parking space, he did not have its keys.    However, even if his consent could be deemed invalid, law enforcement uncovered no incriminating evidence from that vehicle.    Therefore, there would have been no evidence to exclude from law enforcement's search of the Ford, and thus any Fourth Amendment objection would not have altered the outcome of the proceedings.    Counsel was not constitutionally ineffective.

### D. Conclusion

An evidentiary hearing is not necessary to resolve Casanova's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877.    For the foregoing reasons, the court finds that Casanova has not shown that the IATC claims raised in

his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Therefore, his motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case Nos.: 3:15cr19/TKW/EMT; 3:18cv1108/TKW/EMT

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 174) be

**DENIED**.

2.    A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 24th day of July 2020.


*/s/ Elizabeth M. Timothy*_____
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**